# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **R.A.**

**No. 19-0354** (Randolph County 2018-JA-154)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.A., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's March 8, 2019, order terminating her parental rights to R.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights instead of granting her a less-restrictive disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2018, the DHHR filed an abuse and neglect petition against the parents due, in part, to a prior involuntary termination of the parents' parental rights to older children.[2] According to the DHHR, the prior involuntary termination of parental rights was based on the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner appealed the prior involuntary termination of her parental rights to the older children. This Court affirmed the termination. *See In re M.A.*, No. 17-0394, 2017 WL 4773057 (W. Va. Oct. 23, 2017)(memorandum decision).

1

fact that the parents provided alcohol to two teenage girls, one of them the parents' child, A.A.[3] The DHHR further alleged that the prior involuntary termination was based upon the parents' failure to address their children's developmental delays, in addition to lengthy and unreasonable delays in obtaining two important surgeries for a child to address serious medical conditions— pneumonia and a kidney infection. According to the petition, "[t]he lengthy postponements of the surger[ies] resulted in further, significant developmental delays." According to the petition, when the DHHR investigated the birth of R.A., petitioner informed the DHHR that she was "unaware as to why she lost the rights to her [older] children" and that "she was treated unfairly and could not recall why her rights were terminated." The father similarly indicated that "he did not understand why [Child Protective Services] was at the hospital and trying to remove his child." According to the petition, the father "stated that he was treated unfairly and [did] not understand why his rights were terminated" in regard to the older children. The petition further indicated that the father is a registered sex offender. Ultimately, the DHHR alleged that the parents failed to remedy the circumstances that led to the prior involuntary termination of their parental rights to older children, especially in light of the fact that "at the time of the parents' termination in 2017 . . . they had not accepted responsibility for their deficiencies in parenting." The petition alleged that the parents continued to deny responsibility or acknowledge any wrongdoing. The parents later waived their preliminary hearings.

In January of 2019, petitioner stipulated to abusing and neglecting the child based on the prior involuntary termination of her parental rights to the older children. Accordingly, the circuit court adjudicated petitioner of abuse and neglect and set the matter for disposition.

In March of 2019, the circuit court held a dispositional hearing. Prior to the hearing, both parents moved for improvement periods. Both the DHHR and the guardian opposed the motions. During the hearing, the parents both testified and disputed the basis for the prior involuntary termination of their parental rights.[4] The parents also presented testimony from additional

---

[3]A.A. was petitioner's step-daughter. Additionally, the petition makes reference to the fact that, while providing the teenage girls with alcohol, the parents engaged in "a game . . . with sexual innuendos" with the girls. Ultimately, the DHHR alleged that the nature of the game was unclear, but indicated that the parents' conduct "was clearly inappropriate." The record indicates that both parents were charged criminally as a result of this conduct.

[4]On appeal, petitioner makes certain factual claims surrounding her prior abuse of A.A. First, petitioner alleges that the State dismissed the criminal charges filed against her stemming from her conduct with A.A. and her minor friend and providing those children alcohol. On appeal, however, petitioner fails to provide any evidence to corroborate that claim. In support of this assertion, she simply cites to the DHHR's petition, which states that petitioner "claimed these charges were dropped." Even assuming, however, that petitioner is correct that the charges were dismissed, the failure to obtain a criminal conviction based on the same incident that gave rise, in part, to the prior abuse and neglect proceeding is irrelevant because criminal convictions must be obtained by satisfying a higher evidentiary standard than is applicable in abuse and neglect proceedings. *See* syl. pt. 2, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995)

(continued . . . )

witnesses regarding their fitness to parent the child, including testimony from A.A., who had reached the age of majority.[5]

In its dispositional order, the circuit court specifically found that the "prior termination of [the parents'] parental rights [was based on] . . . medical neglect[,] . . . inappropriate sexual conduct with the older child and her friend, and serving alcohol to the older child and her friend." The circuit court went on to find that "[b]oth parents failed to accept responsibility for or acknowledge these parental deficiencies during the prior abuse and neglect matter" and that "[o]utside of [the father's] testimony today that they should have sought medical treatment for the younger child sooner, both parents continue to fail to accept responsibility for the abuse they were adjudicated upon in 2016." Given the parents' refusal to accept responsibility for the conditions that led to the prior involuntary termination of their parental rights and the fact that they failed to substantially correct those conditions, the circuit court found that the child's best

---

(addressing the State's "heavy burden under the guilt beyond a reasonable doubt standard" in criminal proceedings); syl. pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (addressing the DHHR's burden to prove "conditions existing at the time of the filing of the petition . . . by clear and convincing" evidence). Accordingly, the fact that petitioner may not have been criminally convicted as a result of her abusive conduct does not invalidate the prior involuntary termination of her parental rights.

[5]Petitioner asserts that A.A. testified in these proceedings that she fabricated her allegations against the parents. We note, however, that issues regarding A.A.'s recantation were addressed during the prior proceeding. Indeed, in affirming the prior involuntary termination of petitioner's parental rights, we noted that "A.A.[] testified at the [adjudicatory] hearing that she lied about the abuse because the father would not allow her boyfriend to stay overnight with her." *In re M.A.*, 2017 WL 4773057, at *2. However, in addition to the child's attempt to recant her allegations during the prior proceeding, the circuit court

> heard other evidence that A.A.[] fabricated her recantation, including A.A.[]'s admission that, approximately two weeks before the hearing, she texted the same underage friend who engaged in the actions giving rise to the petition and told her that she recanted her testimony so that her siblings would be allowed to go home. The circuit court also heard testimony from the friend wherein she stated that A.A.[] asked her to lie about the abuse and say it did not happen. A.A.[]'s friend also testified about the abuse consistent with her statement to law enforcement.

*Id.* As such, it is clear that the circuit court in the prior proceeding considered the possibility that A.A. fabricated the allegations against the parents and rejected this assertion based on additional evidence and testimony that corroborated the original allegations. Accordingly, any assertion that petitioner either remedied or did not need to remedy any issues of abuse and neglect stemming from this conduct because she was not convicted of any crime or because she asserts that the victim subsequently recanted her allegations has no basis in law or fact.

interests necessitated termination of their parental rights. The circuit court further found that the failure to acknowledge the parental deficiencies resulted in a situation in which there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. As such, the circuit court terminated petitioner's parental rights.[6] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

In support of her lone assignment of error, petitioner argues that she was entitled to a less-restrictive disposition because she established a substantial change in circumstances since the prior termination of her parental rights and that she was likely to fully participate in an improvement period. We note, however, that neither of these assertions has a basis in the evidence, especially considering the circuit court's findings regarding petitioner's failure to acknowledge the conditions of abuse and neglect that led to the prior involuntary termination of her parental rights to her older children.

On appeal, petitioner does not challenge the circuit court's finding that, other than the father's testimony that the parents should have sought medical treatment for one of the older children sooner, "both parents continue to fail to accept responsibility for the abuse they were adjudicated upon in 2016." Indeed, the record is clear that petitioner continues to disregard her abuse of the older children, as evidenced by her belief that she corrected the conditions of abuse and neglect from the prior proceeding because the couple maintained suitable housing with running water and electricity, maintained an automobile, and had stable income through the

---

[6]The father's parental rights were also terminated below. According to respondents, the permanency plan is for the child to be adopted by the current foster family.

4

father's employment. Petitioner fails to recognize that none of these issues is in any way related to the basis for the prior termination of her parental rights to older children.

In regard to a failure to accept responsibility for abuse and neglect, this Court has held as follows:

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Because petitioner failed to acknowledge the continuing conditions of abuse and neglect present in the home, it was not error for the circuit court to deny her an improvement period, since it would have been futile. Accordingly, petitioner cannot establish an abuse of discretion in the denial and is entitled to no relief. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Further, as addressed above, petitioner's assertion that she substantially remedied the circumstances that led to the prior involuntary termination of her parental rights lacks a basis in the record. Simply put, petitioner fails to provide any analysis or context with regard to this assertion that would explain how her maintenance of a home with utilities and a vehicle, coupled with the father's income, in any way corrected the conditions of abuse and neglect upon which she was previously adjudicated, including her failure to obtain appropriate medical treatment; providing alcohol to minors, including her step-daughter; and sexually inappropriate behavior with minors, including her step-daughter.

We have previously held as follows:

[w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ [49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § [49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting syl. pt. 2, *In the Matter of George Glen B.*, 205 W. Va. 435, 518 S.E.2d 863 (1999)). The record is devoid of any attempts by petitioner to correct the conditions of abuse and neglect that led to the prior involuntary termination of her parental rights to older children. Accordingly, we find no error in the circuit court's findings in this regard.

Similarly, we find no error in the termination of petitioner's parental rights, as opposed to a less-restrictive disposition, given that the circuit court found there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the child's welfare, as required by West Virginia Code § 49-4-604(b)(6). Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As set forth above, petitioner failed to acknowledge the conditions of abuse and neglect, thereby making them untreatable. Accordingly, we find no error in the circuit court's findings that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect or that termination was necessary for the child's welfare. Based on these findings, termination of petitioner's parental rights, as opposed to a less-restrictive dispositional alternative, was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 8, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison